[No. 26369. Department Two. December 14, 1936.]

*In the Matter of the Estate of* SAMUEL L. McGHEE, *Deceased.*

SADIE B. SCOTT, *Appellant,* v. JOSEPH L. McGHEE *et al., Respondents.*[1]

[1]Reported in 62 P. (2d) 1336.

*Black & Rucker,* for appellant.

*Clarence J. Coleman* and *G. D. Eveland,* for respondents.

MITCHELL, J.—This is an appeal from a judgment sustaining the contest of a will.

Samuel L. McGhee died in, and a resident of, Snohomish county, Washington, on June 7, 1934. His age was not known, though variously estimated at seventy-three to eighty-six years by the witnesses at the trial. He left an instrument in writing purporting to be his last will and testament. It was dated February 21, 1931, and was duly admitted to probate, in common form. In due time, two of his sons, named in the will as beneficiaries, filed a petition, praying that the decree of probate be set aside, and that the document purporting to be the will of the deceased be set aside, on the grounds of undue influence and testamentary incapacity. The grounds alleged for the contest were denied by an answer. The trial without a jury resulted in a judgment declaring the purported will to be void and setting aside the order admitting it to probate.

The will is short and plain. It was written by the testator. The estate was of the approximate value of twenty-four thousand dollars and consisted mainly of a farm and farming tools, and money and accounts in three or four banks. The appellant, the principal beneficiary under the will, was not related to the testator by blood or marriage.

The testator and his wife became estranged in 1888 and were divorced about 1892, he taking the two boys, the only issue of the marriage. About 1900, the boys, sixteen or seventeen years of age at that time, left the farm and thereafter paid scant, if any, attention to their father. He continued to work and save. He

lived alone and, as he got older, became neglectful of himself and his home. Several times he suffered from sickness that required hospitalization. He finally got Mr. and Mrs. Scott to move into one of his houses on the farm, so that she could look after his needs in the way of food, clothing, and cleanliness. She faithfully carried out her promise to care for him in those respects as long as he lived, according to abundant testimony of the neighbors.

After she had been caring for him some time, he wrote the will in question, giving his property to her, except a small savings bank account to a granddaughter and a small legacy to each of his sons, J. L. and Chester S. The will also mentioned "Wm. McGhee, already provided for." It appears that none of the witnesses at the trial ever saw or knew Wm. McGhee, but several of them testified that they had heard the decedent speak of William, and, upon inquiry, were told by the decedent, in substance, that William was another son, but not of the mother of his other children.

As might be expected, in the case of an old man, neglected and deserted, there were things testified to as having been said or done by the decedent that, in the opinions of witnesses, indicated that the testator was not capable of making a will.

On the contrary, as testified to by a great number of the most intimate and well-informed neighbors and acquaintances of his, there was nothing of serious moment tending to show inability on the part of the testator to make a valid will.

The testator, unaided, attended to all his business affairs, such as paying taxes, looking after his accounts in the several banks, drawing checks, arranging for and paying his hospital bills, and from time to time, in his transactions with the several banks he

patronized, the officers of the bank observed nothing unusual about his conduct or mental condition, and there is no evidence that anyone ever thought of such a thing or suggested the necessity of his having anyone to assist him in looking after his business matters.

One may do or say unusual things at one time, while at other times, for long periods of time, he may say or do nothing at all out of the ordinary. The particular point of time that is important in a case like this is the time at which the will was executed. There is no testimony in this case against the testator's mental condition the day the will was written.

He arranged to go to a hospital for a very minor operation, supposed to keep him in, as it did, only a day or two. He wrote the will in question before going to the hospital and, upon arriving there, asked Thomas H. McFarland, who was connected with the hospital as an orderly and who was an acquaintance of the testator, to get another person; that he wanted them to sign as witnesses to an instrument he would sign. McFarland called in Hazel Jacobson, the oldest nurse on the floor and, like McFarland, well-used, of course, to hospital patients. They acted and signed as witnesses to the will, which the testator signed at the same time.

Mr. McFarland testified that he knew the testator as a hospital patient at former times, and that the testator told him several days before the will was made, that he was going to make one and wanted him to act as a witness. McFarland, upon referring to the testator, further testified:

"His mental condition at that time appeared to be as clear as it was as long as I had known him. After he left the hospital he used to come back occasionally and visit. Following the signing of the will I saw him several times a day. He was all right. After he left the hospital he used to come back and visit. He was fine. I couldn't see any reason why he shouldn't be

competent mentally to make a will as far as I could see that day. . . ."

Hazel Jacobson, the other subscribing witness to the will, testified that she talked with the testator just before the will was signed, and that

" . . . after we signed, Mr. McFarland and I read it together. Mr. McFarland read it aloud in the presence of Mr. McGhee. . . . I dropped in to see Mr. McGhee each day he was there . . . In my opinion, as I saw him that time, he was of sane mind; and he was of sane mind during the time that he was in the hospital. I think he was competent to make a will."

The making of a will like this, under the circumstances here involved, is not a difficult or burdensome undertaking. The question of mental capacity to make a will is a question of fact. The burden to show lack of testamentary capacity was upon the contestant. Our examination of the evidence (the full details of which cannot reasonably be set out in an opinion) satisfies us that the respondents have not met the burden of proof. The preponderance of the evidence is against the conclusion and judgment of the trial court.

The record shows that the trial court, very properly, gave scarcely any heed to the charge of undue influence, upon consideration of all the evidence. The court, in effect, so stated.

Reversed, with directions to dismiss the petition contesting the will and the decree admitting it to probate.

MILLARD, C. J., TOLMAN, HOLCOMB, and BEALS, JJ., concur.